UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD LEE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　Respondent. | Case No. 18-05023 BLF (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY**<br><br><br>(Docket No. 12) |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state conviction.[1] Respondent filed a motion to dismiss the petition as untimely. (Docket No. 12, hereafter "Mot.") Petitioner filed an opposition, (Docket No. 13, hereafter "Opp."), and Respondent filed a reply, (Docket No. 14).[2] For the reasons set forth below, Respondent's motion to dismiss is GRANTED.

---

[1] This matter was reassigned to this Court on October 2, 2018, after Respondent declined magistrate jurisdiction. (*See* Docket Nos. 8, 10.)

[2] Petitioner filed a sur-reply to Respondent's reply. (Docket No. 15.) In the "Order on Initial Review," the Court stated that Respondent's motion would be deemed submitted as of the date the reply brief is due. (Docket No. 7 at 4.) Furthermore, Petitioner did not obtain court approval prior to filing the additional briefing as required under Local Rule 7-3(d). Accordingly, the sur-reply will not be considered.

## I. BACKGROUND

In Contra Costa County Superior Court, a jury found Petitioner guilty of attempted premeditated murder, Cal. Pen. Code, §§ 187(a), 664(a). (Mot. at 2, Ex. A at 1.[3]) In an unpublished opinion, the California Court of Appeal affirmed the conviction on September 25, 2015. (*Id.*) Petitioner filed a petition for review, which the California Supreme Court denied on December 9, 2015. (Mot., Exs. B, C.)

On March 5, 2017,[4] Petitioner mailed a petition for writ of habeas corpus to the Contra Costa County Superior Court, which denied the petition on May 9, 2017. (Mot., Exs. D, E.)

On December 29, 2017, Petitioner mailed a petition for writ of habeas corpus to the California Court of Appeal, which denied the petition on January 10, 2018. (Mot., Exs. F, G.)

On March 5, 2018, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which denied the petition on June 27, 2018. (Mot., Exs. H, I.)

On August 8, 2018, Petitioner mailed the instant federal habeas petition to this Court. (Pet. at 46.) On September 18, 2018, the Court issued an order on initial review for Respondent to file a motion to dismiss the petition as untimely, if appropriate. (Docket No. 7.)

## II. DISCUSSION

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners

---

[3] Any reference to exhibits is to the exhibits filed with Respondent's motion to dismiss, unless otherwise indicated. (Docket Nos. 12-1 through 12-9.)

[4] Respondent concedes that under the "mailbox rule," a pro se petition is deemed constructively filed when it is delivered to prison officials for mailing. (Mot. at 2, fn. 1.)

2

challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id*. § 2244(d)(2).

"Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review); *Bowen*, 188 F.3d at 1159 (same). As the Eighth Circuit put it: "[T]he running of the statute of limitations imposed by § 2244(d)(1)(A) is triggered by either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998), *cert. denied*, 525 U.S. 1187 (1999).

Respondent asserts that the relevant subdivision for calculating the one-year statute of limitations in this case is § 2244(d)(1)(A), such that Petitioner had one year from the date the judgment became final after the conclusion of direct review or the time passed for

3

seeking direct review. (Mot. at 2.) Petitioner's judgment became final on March 8, 2016, which is ninety days after the California Supreme Court denied his petition for review on December 9, 2015. (*Id.*); *see Miranda*, 292 F.3d at 1065. Absent tolling, Petitioner had one year thereafter, *i.e.*, until March 8, 2017, to file a timely federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). Respondent is correct. Because Petitioner filed the instant petition on August 8, 2018, which is seventeen months after the limitations period expired, it is untimely unless tolling applies to save the petition.

### 1. **Statutory Tolling**

The one-year statute of limitations is tolled under § 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state habeas petition filed before AEDPA's statute of limitations begins to run tolls the limitations period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). In other words, until the application has achieved final resolution through the state's post-conviction procedures, by definition it remains "pending." *Id.* at 220.

In California, the state supreme court, intermediate courts of appeal, and superior courts all have original habeas corpus jurisdiction. *Nino v. Galaza*, 183 F.3d 1003, 1006 n.2 (9th Cir. 1999). Although a superior court order denying habeas corpus relief is nonappealable, a state prisoner may file a new habeas corpus petition in the court of appeal. *Id.* If the court of appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review or may instead file an original habeas petition in the supreme court. *Id.* at 1006 n.3.

*Nino* concluded that the limitations period "remains tolled during the intervals between the state court's disposition of a state habeas petition and the filing of a petition <u>at the next state appellate level</u>." *Nino*, 183 F.3d at 1005 (emphasis added). After *Carey*, this

4

means that a state habeas petition is pending "in the absence of undue delay," while a California petitioner "complete[s] a full round of [state] collateral review" all the way to the California Supreme Court. *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (internal quotation marks omitted). This is true even if the contents of the petitions change, *Delhomme v. Ramirez*, 340 F.3d 817, 819-20 (9th Cir. 2003); *Biggs*, 339 F.3d at 1048 n.1, or if the petitioner files additional or overlapping petitions before the first full round of review is complete, *Delhomme*, 340 F.3d at 820. However, if there is any gap between the completion of one round of review and the commencement of another round of state habeas review, the petitioner is not entitled to tolling during the gap. *See id.* at 821; *Biggs*, 339 F.3d at 1046-47, 1048.

Assuming Petitioner is entitled to gap tolling for the entire period his habeas petitions were pending in the state courts, he had three days remaining to file his federal habeas petition: Petitioner filed a state habeas petition on March 5, 2017, which was three days before the limitations period was due to expire on March 8, 2017. *See supra* at 2. Therefore, after the California Supreme Court denied Petitioner's last state petition on June 27, 2018, Petitioner had three days remaining on the limitations period to file a timely federal habeas petition, *i.e.*, no later than June 30, 2018. However, Petitioner did not file the instant action until August 8, 2018, which was 39 days *after* the limitations period had expired. Accordingly, the petition is untimely even after taking into account statutory tolling.

### 2. **Equitable Tolling**

In opposition, Petitioner asserts that he can show "cause and prejudice" based on ineffective assistance of counsel, his placement in the administrative segregation unit ("ASU"), his being heavily medicated because of mental illness, and actual innocence as a basis for excusing his untimeliness. (Opp. at 1-5.) Respondent construes this as an argument for equitable tolling. (Reply at 1-2.)

"[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

5

his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Pace*); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.") The petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). The prisoner also must show that "the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted).

### a. **Ineffective Assistance of Counsel**

Petitioner asserts that appellate counsel failed to prepare and present his mental insanity claim "which demonstrates mitigating circumstances." (Opp. at 3.) In support of this argument, Petitioner sets forth two letters from his appellate attorney. (Opp. at 4, 9-10.) These letters reveal that after reviewing the trial record and consulting with Petitioner's trial attorney, the appellate attorney found no support for Petitioner's claim that he was suffering from mental problems, and that there was simply no basis to raise a claim on appeal based on mental illness. (*Id.*) Respondent asserts that nothing in this advice shows that Petitioner was delayed by ineffective assistance of counsel in presenting a timely petition. (Reply at 2.) The Court agrees. The letters from appellate counsel are dated October 31, 2014, and January 21, 2015. (Opp. at 9-10.) In the last letter, appellate counsel advised Petitioner that he could still pursue the mental illness claim in a habeas petition after his direct appeal became final. (*Id.* at 10.) This advice was given well before the limitations period had even begun to run on Petitioner's federal habeas petition since his direct appeal had not yet concluded. Therefore, even if appellate counsel rendered ineffective assistance by failing to raise the mental illness claim on appeal, it cannot be said that this failure prevented Petitioner from filing a timely federal habeas petition

raising the mental illness claim. Accordingly, Petitioner has failed to show that external forces, rather than his own lack of diligence, accounts for his failure to file a timely petition. *See Miles*, 187 F.3d at 1107. Petitioner is not entitled to equitable tolling based on ineffective assistance of counsel.

### b. <u>Placement in ASU and Access to Legal Property</u>

Petitioner next argues that his placement in the ASU should excuse his untimeliness, as well as the delay in mail reaching him, circumstances which were beyond his control. (Opp. at 4.) In support, he provides his own declaration, prison classification records, and inmate appeals. (*Id.* at 8, 21-34.)

According to these documents, Petitioner was placed in the ASU on December 24, 2016, pending investigation of his being a threat to the safety of the institution due to a physical altercation in the dining hall. (*Id.* at 34.) On August 6, 2017, Petitioner was again placed in the ASU due to a pending investigation of allegations that he was involved in the distribution of a controlled substance within the institution. (*Id.* at 30.) On August 13, 2017, Petitioner prepared an inmate appeal regarding a delay in receiving his property because of a lockdown. (*Id.* at 26.) On November 14, 2017, the classification committee reviewed Petitioner's placement in the ASU, and ordered him released from the ASU. (*Id.* at 31.) On March 15, 2018, Petitioner was placed in the ASU upon transfer from a different institution pending a review by the classification committee to determine if he could be safely housed in the general population. (*Id.* at 30.) On April 10, 2018, Petitioner was placed in the ASU upon transfer from a different institution pending review by the classification committee to determine if he could be safely housed in the general population. (*Id.* at 29.) On May 4, 2018, Petitioner was retained in the ASU because no bed was available in the general population housing. (*Id.* at 28.) On August 16, 2018, Petitioner was placed in the ASU upon transfer from a different institution pending a review by the classification committee to determine if he could be safely housed in the general population. (*Id.* at 25.)

In reply, Respondent points out that it is already assumed that Petitioner is entitled

7

to statutory tolling from March 5, 2017, when he filed a habeas petition to the state superior court, until June 27, 2018, when the California Supreme Court denied his last state habeas petition. (Reply at 4); *see supra* at 2, 5. Respondent asserts, therefore, that any occurrences within that time, i.e., his placement in the ASU on August 6, 2017, August 13, 2017, November 14, 2017, March 15, 2018, April 10, 2018, and May 4, 2018, do not excuse delays before March 5, 2017, or after June 27, 2018. (Reply at 4.) The Court agrees, such that it cannot be said that Petitioner's placement in the ASU or the delay in mail during the statutory tolling period proximately caused him to delay filing his federal habeas petition during that period. Furthermore, as Respondent also argues, Petitioner's placement in the ASU on August 16, 2018, cannot be the cause of any delay since it occurred *after* August 8, 2018, when he filed the instant action.

Lastly, Respondent asserts that Petitioner has failed to adequately explain how his placement in the ASU on December 24, 2016, which was before the statutory tolling period began, prevented him from filing a timely federal habeas petition. (Reply at 5.) Respondent is correct that Petitioner makes only a general assertion and no specific explanation as to how his placement in the ASU prevented him from timely filing. The burden is on Petitioner to show that he has been pursuing his rights diligently and that some "extraordinary circumstance" made it impossible to file a petition on time. *See Holland*, 560 U.S. at 649; *Miranda*, 292 F.3d at 1065; *Ramirez*, 571 F.3d at 997. As discussed above, Petitioner's judgment became final on March 8, 2016. *See supra* at 3. However, he did nothing until nearly a year later, when he filed his first habeas petition in state superior court on March 5, 2017. Furthermore, he fails to explain how he was diligently pursuing his rights during the over nine-month period that passed since his judgment became final on March 8, 2016, until he was first placed in the ASU on December 24, 2016. Nor does Petitioner explain how his temporary placement in the ASU at that time made it impossible to file a timely petition. Accordingly, Petitioner has failed to show that external forces, rather than his own lack of diligence, accounts for his failure to file a timely petition. *See Miles*, 187 F.3d at 1107. Petitioner is not entitled to equitable

8

tolling based on his placement in the ASU or any delay in the mail.

### c. **Mental Illness**

Petitioner next asserts that he was heavily medicated due to mental illness which was the proximate cause for his failure to file a timely petition. (Opp. at 5.) In support, he cites to "Exhibit 'C'" which is not attached to his opposition. (*Id.*) However, other documents attached to the opposition papers show that Petitioner gave informed consent to psychotropic medications on April 16, 2014, and May 29, 2014, (*id.* at 13-14); he was prescribed psychiatric medications on November 19, 2015, (*id.* at 17); he was treated for major depression on November 27, 2017, (*id.* at 18); and he was prescribed medication for anxiety on "11/18" which most likely refers to a date in the year 2017 or earlier since the document has a reference date of "2018-02-09," (*id.* at 19[5]).

The Ninth Circuit held that eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test:

> (1) First, a petitioner must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either
>
>     (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>     (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (citations and footnote omitted); *see also Orthel v. Yates*, 795 F.3d 935, 941 (9th Cir. 2015) (affirming district court's dismissal of petition where substantial evidence showed—despite fluctuations in mental health—petitioner possessed sufficient competence and capability in the year following the

---

[5] On the bottom right hand corner of this document, there is a typed reference number: "Confidential Saved 2018-02-09R21:27:39Z," which indicates that the document could not have been created any later than 2018.

date on which state court judgment became final as well as sufficient competence during much of the eleven-year span between finality of judgment and filing of his federal petition).

The standard requires the court to evaluate the petitioner's ability to do by himself the two functions involved in complying with AEDPA filing deadlines—i.e., understand the need to file within the limitations period and submit a minimally adequate habeas petition—and to evaluate the petitioner's diligence in seeking assistance with what he could not do alone. *Bills*, 628 F.3d at 1100-01. *Compare Forbess v. Franke*, 749 F.3d 837, 841-42 (9th Cir. 2014) (petitioner entitled to equitable tolling where, during relevant period, petitioner suffered from delusions so severe that he was unable to understand the need to timely file his petition and the unique nature of those delusions made it impossible for him to timely file), *with Yeh v. Martel*, 751 F.3d at 1078 (9th Cir. 2014) (petitioner not entitled to equitable tolling where, despite his mental illness of an unspecified sort, he repeatedly sought administrative and judicial remedies and showed awareness of basic legal concepts; his impairment and allegations about his impairment "come nowhere close to those in *Forbess*"). *But see Yeh*, 751 F.3d at 1081 (Bright, J., dissenting) (criticizing majority for rejecting mental impairment equitable tolling argument without an evidentiary hearing having been held on the matter). A petitioner's failure to satisfy the second prong is sufficient basis to deny habeas relief. *See Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012) (petitioner's alleged mental incompetence insufficient to warrant equitable tolling because he did not meet burden of showing that he could not have filed petition with the assistance he was receiving).

In reply, Respondent points out that equitable tolling could not apply to any time before December 9, 2015, when the California Supreme Court denied a petition for review, since the one-year limitations period had not yet begun to run. Nor can it be said that equitable tolling applies during the time statutory tolling is in effect, *i.e.*, from March 5, 2017, to June 27, 2018. (Reply at 6.) Respondent is correct. Accordingly, the fact that Petitioner was on psychotropic medications on the dates indicated on the supporting

10

documents does not support equitable tolling because these dates all fall within these inapplicable time periods. *See supra* at 9.

Furthermore, Petitioner has failed to satisfy either of the *Bills* factors, even assuming he has a mental disability.[6] *See Bills*, 628 F.3d at 1100-01. Under the first *Bills* factor, Petitioner fails to show that his mental impairment was an extraordinary circumstance beyond his control which rendered him "unable rationally or factually to personally understand the need to timely file." *Id.* at 1099-1100. Rather, the supporting documentation submitted with his opposition shows that his disability did not cause any severe impairment. For example, Petitioner was still able to give appropriate responses to questions on May 15, 2018, April 10 and 12, 2018, May 4, 2018, and August 16, 2018, (Reply at 7, citing Opp. at 24-25, 28-30), and to submit inmate appeals on August 13 and 28, 2017, (*id.* at 26, 27). Secondly, the record shows that Petitioner was still able to pursue his claims and file state and federal habeas petitions, which indicates that his mental state did not render him unable to personally prepare habeas petitions and effectuate their filing. *See Bills*, 628 F.3d at 1099-1100.

Petitioner also fails to show the second *Bills* factor, *i.e.*, diligence in pursuing the claims to the extent he could understand them but that his mental impairment made it impossible to meet the filing deadline under the totality of the circumstances. *Id.* As discussed above, Petitioner fails to explain his inactivity after his judgment became final on March 8, 2016, in waiting nearly an entire year before filing his first state habeas petition on March 5, 2017. *See supra* at 2, 8. There is no indication that he was under psychotropic drugs during this time, *id.* at 10, and no allegation that he was seeking assistance to do what he was unable to do alone. Petitioner's failure to satisfy the second prong is sufficient basis to deny habeas relief. *See Stancle*, 692 F.3d at 959. Accordingly, Petitioner has failed to show that external forces, rather than his own lack of diligence,

---

[6] Respondent concedes that the classification documents Petitioner presented show that he had a "CCCMS" disability. (Reply at 6-7, fn. 2.)

11

accounts for his failure to file a timely petition. *See Miles*, 187 F.3d at 1107. Petitioner is not entitled to equitable tolling based on a mental impairment.

### d. **Actual Innocence**

Lastly, Petitioner seeks to show cause for his untimely filing based on actual innocence. (Opp. at 4.) He raises it with a citation to *Murray v. Carrier*, 477 U.S. 478, 496 (1986), and argues that he can show cause based on ineffective assistance of counsel for failing to prepare and present mitigating circumstances. (*Id.*)

In *McQuiggin v. Perkins*, the Supreme Court held that actual innocence, if proved, can provide an equitable exception to the AEDPA statute of limitations if the failure to hear the habeas claims would constitute a "miscarriage of justice." 569 U.S. 383, 391-936 (2013) (holding that miscarriage of justice (actual innocence) showing applies to claims filed after the AEDPA statute of limitations has run, as well as to successive, abusive and procedurally defaulted claims); *see Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *see Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) ("[t]he miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt"). Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc). In order to pass through the *Schlup* gateway, however, "a petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 314–15 (omission in original) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316.

Petitioner was convicted of attempted murder after the victim identified him as the person who shot him in the head. (Mot., Ex. A at 2.) Furthermore, Petitioner testified at

12

trial, asserting that he shot the victim in self-defense or defense of another. (*Id.* at 8-10.) On appeal, Petitioner claimed error for not being able to impeach the victim with his prior convictions. (*Id.* at 12-13.) For the first time in his opposition to Respondent's motion to dismiss, Petitioner asserts actual innocence. However, he presents no new evidence to support this claim. (Opp. at 4.) Accordingly, it cannot be said that Petitioner has produced "sufficient proof of his actual innocent" implicating "a fundamental miscarriage of justice" to pass through the narrow *Schlup* gateway. 513 U.S. at 314–15. Petitioner is not entitled to equitable tolling based on actual innocence.

Based on the foregoing, Petitioner has failed to show that he is entitled to equitable tolling to defeat Respondent's motion to dismiss. Accordingly, the motion to dismiss the petition as untimely should be granted.

### III. CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss the petition, (Docket No. 12), is **GRANTED**. The instant petition for a writ of habeas corpus is **DISMISSED** as untimely.

No certificate of appealability is warranted in this case. *See* Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This order terminates Docket No. 12.

**IT IS SO ORDERED.**

Dated: May 30, 2019

BETH LABSON FREEMAN
United States District Judge

Order Granting Motion to Dismiss; Denying COA
P:\PRO-SE\BLF\HC.18\05023Lee_grant.mtd (sol)

13